STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-470

STATE OF LOUISIANA

VERSUS

ROBERT EARL SANDERS

************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 322,524
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

************

D. KENT SAVOIE
JUDGE

************

Court composed of John D. Saunders, Billy H. Ezell, and D. Kent Savoie, Judges.

CONVICTIONS AFFIRMED. SECOND DEGREE BATTERY SENTENCE VACATED. REMANDED FOR RESENTENCING WITH INSTRUCTIONS. DOMESTIC ABUSE AGGRAVATED ASSAULT SENTENCES AMENDED. SECOND DEGREE KIDNAPPING SENTENCE AFFIRMED. MOTION TO WITHDRAW GRANTED.

**Phillip Terrell, District Attorney**
**Numa V. Metoyer, III, Assistant District Attorney**
**Ninth Judicial District Court**
**Parish of Rapides**
**State of Louisiana**
**P. O. Box 1472**
**Alexandria, LA  71309**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**P.O. Box 2125**
**Lafayette, LA  70502**
**(225) 806-2930**
**COUNSEL FOR APPELLANT:**
    **Robert Earl Sanders**

**Savoie, Judge.**

Defendant, Robert Earl Sanders, was charged by bill of information with one count of second degree kidnapping, one count of second degree battery, and three counts of domestic abuse aggravated assault. Defendant was convicted by a unanimous jury for each of the charged offenses. The court sentenced Defendant to fifteen years at hard labor without the benefit of parole, probation, or suspension of sentence for second degree kidnapping, six years at hard labor for second degree battery, and four years at hard labor without the benefit of parole, probation, or suspension of sentence for each count of domestic abuse aggravated assault.

Defendant is before this court appealing his conviction and sentence. Appellate counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967) alleging the record contains no non-frivolous issues for appeal; thus, he requests this court grant his accompanying motion to withdraw. Defendant has filed a *pro se* brief. For the following reasons, we affirm Defendant's convictions and sentences and grant appellate counsel's motion to withdraw.

## FACTS:

Lisa Elliott, Defendant's girlfriend, testified that after work on July 17, 2014, she and her boss, Mike Smith, were sitting in his kitchen drinking beer when Defendant rode over on his bicycle to get his house key and cell phone. Ms. Elliot and Defendant had been living together for approximately two years, and Defendant did not like her associating with Mr. Smith. After Mr. Smith gave Defendant the items he wanted, Ms. Elliott remembered she had Defendant's phone charger. She went out of the door to hand it to him. When she did, Defendant grabbed her, picked her up by the scruff of her neck, and threw her

down the stairs of the second story garage apartment. Ms. Elliott testified that the fall did not hurt her.

Ms. Elliott further testified that, as she subsequently walked down the driveway, Defendant took her by the arm and escorted her back to his apartment against her will. He then held a metal meat skewer to her temple and told her "if the police come knocking on the door. . . I'm gonna go to jail 'cause I'm gonna juke you." Ms. Elliott begged him not to hurt her. As she hovered against the bathroom door, Defendant sprayed her hair, face, and clothes with lighter fluid and "made like he was gonna set [her] afire." He told her that he was not going to kill her, but he was going to make her look like a mummy. Defendant then sat down on a chair near Ms. Elliot and "kept smacking" her on the top of the head with the flat side of the blade of a long-bladed kitchen knife and twice kicked her in the head with the side of his foot. At some point, Defendant opened the door of the apartment and told Ms. Elliott that she could leave, but she was afraid to, perceiving this as a test of her loyalty to him.

After attempting to "talk him down" and convince him that she was still his "girl," Ms. Elliott returned with Defendant to Mr. Smith's house to retrieve his bicycle. While there, she saw some people she knew. Fearing she was about to be "really hurt" by Defendant, she tried to get in the car with them. They thought she was kidding, and Defendant heard her, so she started back to Defendant's apartment with him. Defendant was not holding onto her, but he told her to pick up the pace when she attempted to lag behind to see if any cars drove by.

At one point, Ms. Elliot began to yell for help, which resulted in Defendant grabbing her and throwing her to the ground. Her head hit the street, causing a "really bad head injury." Dazed, Ms. Elliott was led back to the apartment by

Defendant. When she was in a lighted area, Ms. Elliott saw that she was soaked in blood, and she observed "spongy bits of tissue" in her scalp wound. Defendant poured lighter fluid into her head wound, and he then made Ms. Elliott wash dishes. Ms. Elliot told Defendant she needed to go to the hospital because she was losing so much blood. With each plea for help, Defendant slapped her in the face.

Finally, being unable to continue standing, Ms. Elliott lay down on the kitchen floor where she stayed for a couple of hours. Ms. Elliot testified she was prevented from leaving because Defendant had moved furniture against the door and because Defendant was lying down in a room where he could watch her. At one point, it appeared Defendant was asleep, but Ms. Elliot was afraid to leave because "he's very fast[,]" and any attempt to move the blockade "woulda made all kinda racket."

Ms. Elliott went and asked Defendant to help her, and he let her lay down in the bed with a towel on her head. Afraid Defendant would be angry if she got blood on the bed, Ms. Elliott got on the floor at the foot of the bed. A few hours later, Defendant got her up and helped her clean up her hair and skin. She then slept for a little while before Defendant woke her up and made her clean the bathroom. She rested a little while longer before he woke her up and told her she could leave if she wanted.

According to Ms. Elliott, Defendant seemed regretful, and he asked her why she made him have to hurt her, and why she made him so crazy. He then gave her some of his clothes to wear and she left. Ms. Elliott went to Mr. Smith's apartment, and they contacted her mother who came to get her. Since her head wound was over twenty-four hours old, she did not think it could be stitched, so

she and her mother left the emergency room, which was full of other people waiting to be seen.

Ms. Elliott's mother contacted authorities. They took pictures of Ms. Elliott's injuries and later took her statement. Five months later, police arrested Defendant. Prior to the arrest, Ms. Elliott and Defendant were again living together. At trial, Ms. Elliot explained that they were attempting to reconcile and overcome this event.

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find three errors patent.

First, for second degree battery, Defendant was sentenced to serve six years at hard labor. At the time of the commission of the offense, second degree battery carried a penalty of a fine of not more than $2,000.00, or imprisonment with or without hard labor for not more than *five years*, or both. La.R.S. 14:34.1. Although the statute was amended to allow for a sentence of up to eight years, this provision was not in effect at the time of the commission of the offense. "A defendant must be sentenced according to the sentencing provision in effect at the time of the commission of the offense." *State v. Sugasti*, 01-3407, p. 4 (La. 6/21/02), 820 So.2d 518, 520 (*citing State v. Narcisse*, 426 So.2d 118 (La.1983)). Thus, Defendant received an illegally excessive sentence for second degree battery. Accordingly, we vacate Defendant's sentence for this conviction and remand the case for resentencing by the trial court.

Next, domestic abuse aggravated assault, a violation of La.R.S. 14:37.7, carries a sentence of hard labor for not less than one year nor more than five years.

4

While the term of Defendant's four year sentence on each count is legal, the trial court's denial of benefits is not. At sentencing, the judge stated "those are to be without benefit and with a permanent protective order." Accordingly, we amend these three sentences to strike the denial of the benefits of parole, probation, or suspension of sentence. The trial court is instructed to make an entry in the court minutes reflecting this amendment.

Finally, the record does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform Defendant of the provisions of Article 930.8 at resentencing.

## *ANDERS* ANALYSIS:

Pursuant to *Anders*, Defendant's appellate counsel filed a brief stating that he made a conscientious and thorough review of the trial court record and could find no non-frivolous errors on appeal. Thus, he seeks to withdraw.

In *State v. Benjamin*, 573 So.2d 528 (La.App. 4 Cir. 1990), the fourth circuit explained the *Anders* analysis:

> When appointed counsel has filed a brief indicating that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, *Anders* requires that counsel move to withdraw. This motion will not be acted on until this court performs a thorough independent review of the record after providing the appellant an opportunity to file a brief in his or her own behalf. This court's review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; (2) a review of all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a review of all pleadings in the record; (4) a review of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal. Under C.Cr.P. art. 914.1(D) this Court will order that the appeal record be supplemented with pleadings, minute entries and transcripts when the record filed in this Court is not sufficient to perform this review.

*Id.* at 531.

While it is not necessary for Defendant's appellate counsel to "catalog tediously every meritless objection made at trial or by way of pre-trial motions with a labored explanation of why the objections all lack merit[,]" counsel's *Anders* brief must "'assure the court that the indigent defendant's constitutional rights have not been violated.' *McCoy* [*v. Court of Appeals of Wisconsin*, 486 U.S. [429] at 442, 108 S.Ct. [1895] at 1903 [(1988)]." *State v. Jyles*, 96-2669, p. 2 (La. 12/12/97), 704 So.2d 241, 241. Counsel must fully discuss and analyze the trial record and consider "whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the [trier of fact] for its consideration." *Id.* Thus, counsel's *Anders* brief must review the procedural history and the evidence presented at trial and provide "a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place." *State v. Mouton*, 95-981, p. 2 (La. 4/28/95), 653 So.2d 1176, 1177.

In his *Anders* brief, appellate counsel summarized the pertinent testimony presented at trial to support his assertion that the State presented sufficient evidence to establish each element of the charges against Defendant. Despite the victim's admission at trial that she lied at the preliminary examination, or alternatively, was lying at trial, counsel notes that the jury was free to accept or reject in whole or in part any portion of a witness's testimony. Counsel also details some objections made at trial, and, although he contends some of the rulings were legally incorrect, he suggests that admission of the contested evidence was harmless error.

Next, counsel suggests that the patent error which occurred in trying Defendant for second degree battery before a jury of more than six persons was waived. Finally, counsel contends that the sentences imposed on Defendant were not excessive. Accordingly, counsel asserts that his review of the record supports no non-frivolous issues to raise on appeal. We find counsel's brief complies with the requirements set forth in *State v. Jyles*, 96-2669 (La. 12/12/97), 704 So.2d 241 and *State v. Mouton*, 95-981 (La. 4/28/95), 653 So.2d 1176.

Pursuant to *Anders*, 386 U.S. 738, and *Benjamin*, 573 So.2d 528, this court has performed a thorough review of the record, including pleadings, minute entries, the charging instrument, and the transcripts, and has confirmed the statements made by appellate counsel. Defendant was properly charged in the bill of information and was present and represented by counsel at all crucial stages of the proceedings. Contrary to counsel's assertion, Defendant was correctly tried by a jury of twelve. *See* La.Code Crim.P. art. 493.2. The verdicts were correct, and the legality of the sentences was addressed above. In reviewing the transcripts to determine if any ruling provides an arguable basis for appeal, we note there were a number of objections by defense counsel, some of which were mentioned by counsel in his brief; however, none of the rulings support a non-frivolous issue to raise on appeal, as suggested by counsel.

**Pro se brief:**

Defendant filed a document in this court requesting that he be allowed to file a supplemental *pro se* brief once he received a copy of the appellate record. He stated that he wished to review the appellate record so that he could exercise his constitutional right to judicial review based upon a complete record of all evidence. The record was forwarded to Defendant, and he was given until August 31, 2016,

7

to file a supplemental brief. No brief was received. Thus, we have reviewed the vague allegations made by Defendant, which were never fully developed via supplemental brief.

First, Defendant complains of the inconsistency in the victim's testimony at the preliminary examination and the trial. Also, he notes that the police report indicates the victim's injury was a "minor injury," but the victim testified that the injury was much more serious. The inconsistency in the victim's testimony and the extent of her injuries were all brought out at trial and were therefore placed before the jury for its consideration. "The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness[.]" *State v. Higgins*, 03-1980, p. 17 (La. 4/1/05), 898 So.2d 1219, 1232, *cert. denied*, 546 U.S. 883, 126 S.Ct. 182 (2005). Thus, the jury was free to accept or reject the victim's testimony, and they resolved the credibility determination in favor of the victim. Thus, we find these claims have no merit.

Next, Defendant claims Detective Painter lied regarding previous charges against Defendant. Detective Painter testified at trial, and again, the jury was free to accept or reject her testimony. This claim has no merit.

Defendant also appears to claim that his attorney was ineffective in failing to show him Detective Painter's affidavit until after trial and also in failing to do anything to help Defendant with his case. In *State v. Mitchell*, 13-426, pp. 27-29 (La.App. 3 Cir. 11/6/13), 125 So.3d 586, 604-05, *writ denied*, 14-102 (La. 6/20/14), 141 So.3d 807, this court stated:

> A claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief because this allows the trial court to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record

8

> contains sufficient evidence to decide the issue, and the issue is raised by an assignment of error on appeal, it may be considered by the appellate court. *State v. Tapp*, 08-1262 (La.App. 3 Cir. 4/1/09), 8 So.3d 804; *See also State v. James*, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461.

*State v. Christien*, 09-890, p. 7 (La.App. 3 Cir. 2/3/10), 29 So.3d 696, 701.

> . . . .

> . . . Decisions relating to investigation, preparation, and strategy require an evidentiary hearing and cannot possibly be reviewed on appeal. Only in an evidentiary hearing in the district court, where the defendant could present evidence beyond that contained in the instant record, could these allegations be sufficiently investigated. Accordingly, the defendant's claims of ineffective assistance of counsel will be relegated to post-conviction relief.

Similarly, the ineffective assistance of counsel claims raised by Defendant in this case are relegated to post-conviction relief.

Finally, Defendant claims his request for a copy of the trial transcript from the trial court was unanswered, and he requests that the trial transcript be "released" to him. This court provided Defendant with a copy of the appellate record which contains a copy of the trial transcript. Accordingly, this claim is misguided.

Finding no non-frivolous issues and no merit to the *pro se* assignments of error raised by Defendant, we grant counsel's motion to withdraw.

## DECREE:

Defendant's convictions are affirmed. His sentence for second degree battery is vacated, and the case is remanded for resentencing for this conviction. At the resentencing proceeding, the trial court is directed to inform Defendant of the provisions of La.Code Crim.P. art. 930.9. Each of Defendant's sentences for domestic abuse aggravated assault is amended to delete the denial of the benefit of

9

parole, probation, or suspension of sentence. The trial court is instructed to make an entry in the court minutes reflecting this amendment. Defendant's sentence for second degree kidnapping is affirmed, and his sentences on each count of domestic abuse aggravated assault are affirmed as amended.

**CONVICTIONS AFFIRMED. SECOND DEGREE BATTERY SENTENCE VACATED. REMANDED FOR RESENTENCING WITH INSTRUCTIONS. DOMESTIC ABUSE AGGRAVATED ASSAULT SENTENCES AMENDED. SECOND DEGREE KIDNAPPING SENTENCE AFFIRMED. MOTION TO WITHDRAW GRANTED.**